UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHERYL PUFFER, as the personal representative of the estate of CHARLES PUFFER, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 17-cv-1222-JES-JEH |
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant's Motion (Doc. 74) to Exclude Expert Testimony of Dr. Ernest P. Chiodo. Plaintiff has filed a Response (Doc. 76) in Opposition to Defendant's Motion, to which Defendant has filed a Reply (Doc. 79). For the reasons set forth below, Defendant's Motion (Doc. 74) is DENIED.

### BACKGROUND

Plaintiff Cheryl Puffer ("Plaintiff") filed this action against Defendant Union Pacific Railroad Company ("UPRC") on May 19, 2017 and filed a Second Amended complaint on October 20, 2017. Doc. 19. Plaintiff filed this suit as the personal representative of the estate of her late husband, Charles Puffer ("Mr. Puffer"). Doc. 74, at 4. Mr. Puffer was employed by Defendant for 42 years as a member of Defendant's bridge department from 1960 to 2003. Doc. 19, at 2. At some point, Mr. Puffer developed cancer, which led to his death on May 22, 2014. *Id.* at 3-4. Plaintiff alleges Defendant violated the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA") by failing to provide Mr. Puffer "with a reasonably safe place to work, a failure which in whole or in part, caused Mr. Puffer's development on tonsil cancer." Doc. 76, at 1.

On September 8, 2019, Dr. Ernest P. Chiodo issued his first opinion in this matter on whether Mr. Puffer's workplace exposures were a cause of his tonsil cancer. Doc. 74-3, at 8. Dr. Chiodo issued his second report on February 24, 2020, which incorporated the opinions from his initial report and added ten new records to the list of materials that he reviewed. *Id.* at 4-5. Finally, Dr. Chiodo issued a supplemental report on March 4, 2020 confirming that Mr. Puffer's diagnosis of "adenocarcinoma of the left tonsil to the circumferential hypopharynx and one center into the cervical esophagus" did not change Dr. Chiodo's previous opinion. Doc. 74-6.

On March 5, 2020, Plaintiff served amended Rule 26 expert disclosures designating Dr. Chiodo as her sole medical and liability expert. Doc. 74-3, at 1. Dr. Chiodo "opined that Mr. Puffer's tonsil cancer (or oropharyngeal cancer) was caused, at least in part, by welding fumes[1]." Doc. 76, 2. Pursuant to Plaintiff's amended Rule 26 expert disclosures, Dr. Chiodo is expected testify to the nature, extent, and causation of Mr. Puffer's injuries. Doc. 74-3, at 1. Dr. Chiodo is also expected to testify to Mr. Puffer's "exposure to carcinogens and the railroad industry's knowledge of the hazards of exposure to toxins." *Id*. On July 15, 2020, Defendant filed its Motion to exclude Dr. Chiodo's expert testimony and requested a hearing on its Motion. Doc. 74. Upon Defendant's request, a *Daubert* hearing was held on November 16, 2020.

## LEGAL STANDARD

In its vital gatekeeping role, a district court has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). "A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert* . . . ." *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 771

---

[1] On September 24, 2020, the Court granted Defendant's unopposed Motion (Doc. 75) for Partial Summary Judgment as to Plaintiff's FELA claims on all substances other than welding fumes.

(7th Cir. 2014). *Daubert* identified four factors courts can use to evaluate the reliability of an expert's testimony: "(1) whether the expert's conclusions are falsifiable; (2) whether the expert's method has been subject to peer review; (3) whether there is a known error rate associated with the technique; and (4) whether the method is generally accepted in the relevant scientific community." *Id.* at 772 (citing *Daubert*, 509 U.S. at 593-94). However, the *Daubert* factors are not an exhaustive list and no single factor is outcome determinative. *Gopalratnam v. Hewlett-Packard Company*, 877 F.3d 771, 780 (7th Cir. 2017). In determining the admissibility of an expert, the court's examination is strictly limited to the expert's methodology, not the correctness of the expert's conclusions. *Id*. The Seventh Circuit Court of Appeals has identified a three-step analysis district courts must take in order to admit expert testimony. *See Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) ("It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue."). The party offering the expert bears the burden of establishing the expert's testimony satisfies the *Daubert* standard by a preponderance of the evidence. *Brown*, 765 F.3d at 771.

## DISCUSSION

Plaintiff's claim against Defendant is based on negligence under the FELA. Doc. 19, at 1. The FELA was "designed to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operations." *Wilkerson v. McCarthy et al*., 336 U.S. 53, 68 (1949) (Douglas, J., concurring). However, it is not a worker's compensation statute, nor does it make the employer an insurer. *See Myers*, 629 F.3d at 642 (quoting *Wilkerson*, 336 U.S. at 68, "the Act did not make the employer an insurer. The liability which it imposed was the liability for negligence."). Plaintiff must prove all elements of a negligence claim including that the

railroad defendant was negligent, and the railroad's negligence caused the plaintiff's injury. *Id*. Courts have "liberally construed" the FELA to include a 'relaxed standard of causation' wherein a plaintiff only needs to prove the employer's "negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Brown*, 765 F.3d at 771 (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542-43 (1994)). Regardless of the causation standard in FELA claims, Dr. Chiodo's expert testimony must be admissible based on the Federal Rules of Evidence, as construed by *Daubert*.

## I. Admissibility of Dr. Chiodo's Testimony

In order to prove causation in this case, Plaintiff offers Dr. Chiodo as Plaintiff's sole expert. Doc. 74-3, at 1. In its Motion, Defendant argues Dr. Chiodo's opinions on general causation and specific causation are unreliable because he did not follow "any established or scientific methodology in forming his opinion." Doc. 74, at 2. Therefore, he merely relied on his own *ipse dixit* in rendering his opinion, not science, because he did not give detail regarding his knowledge, experience, and training in forming his general causation opinion. *Id.* at 7, 10. Additionally, Defendant contends Dr. Chiodo did not conduct a thorough review of the literature surrounding welding fumes and cancer which formed his general causation opinion. *Id.* at 7. In both its Motion and at the *Daubert* proceeding, Defendant highly criticized the Awan study[2] and Yatera study,[3] which Dr. Chiodo cites in his expert report. *Id.* at 11. It argues the articles do not support Dr. Chiodo conclusions. As to specific causation, Defendant argues Dr. Chiodo did not meaningfully consider alternative causes of Mr. Puffer's cancer. *Id.* at 18.

---

[2] Awan et al., *Occupational Exposures And Squamous Cell Carcinoma Of The Oral Cavity, Pharynx, Larynx, And Esophagus: A Case-Control Study,* 40 HEAD & NECK 2724-2732 (2018).
[3] Yatera et al., *Cancer Risks Of Hexavalent Chromium In The Respiratory Tract*, 40 J. UOEH 157-172 (2018).

In her Response, Plaintiff argues Dr. Chiodo's opinions are reliable because he "has multiple degrees that touch on all issues of this case, from medical causation to industrial hygiene to toxicology." Doc. 76, at 4. For general causation, Plaintiff notes Dr. Chiodo relied on his education, training, and experience then tested his hypothesis through a literature search. *Id.* at 4-5. Plaintiff argues he found sufficient data and reliable evidence from the studies he cites in his Report and Defendant's criticisms go to the weight of his testimony, not the admissibility. *Id.* at 5. For specific causation, Plaintiff responds, "Dr. Chiodo performed a satisfactory differential etiology and appropriately ruled in his occupational exposure to welding fumes." *Id*.

Dr. Chiodo's testimony at the *Daubert* proceeding clarified his methodology in arriving at his causation conclusions and cleared up numerous points Defendant raised in its brief. After considering the Parties' briefs, Dr. Chiodo's deposition, Dr. Chiodo's expert reports, and the five-hour *Daubert* proceeding, which included oral arguments, the Court has determined Dr. Chiodo's expert testimony is admissible. The Court does not opine on whether Dr. Chiodo's opinion is correct; but rather whether it is reliable. It will be up to the jury to determine whether Dr. Chiodo is credible and whether his opinion is correct. *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). "So long as the principles and methodology reflect reliable scientific practice, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id*. (quoting *Daubert*, 509 U.S. at 596).

Defendant does not challenge Dr. Chiodo's qualifications and the Court does not take issue with his credentials either.[4] In any event, Dr. Chiodo is qualified as he has earned, among

---

[4] *See O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir.1994) (upholding a district court's sua sponte consideration of the admissibility of an expert's testimony); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009) (reaffirming a district court's ability to consider the admissibility of experts sua sponte).

other things, his Doctor of Medicine; masters' degrees in Public Health, Biomedical Engineering, and Occupational and Environmental Health Sciences with a specialization in Industrial Toxicology; and Board Certifications in Internal Medicine, General Preventative Medicine, Industrial Hygiene, and Public Health. *See* Docs. 74-4, at 3-4; 76, at 5. He is licensed to practice medicine in four states and has had numerous professorships teaching medicine. *Id*. Therefore, the Court focuses it analysis in this Order on the reliability and relevance of his expert testimony.

### A. General Causation

The Court does not find Dr. Chiodo's testimony to be mere *ipse dixit* as Defendant characterizes it. While an expert cannot merely rely on his credentials, the articles cited by Dr. Chiodo demonstrate the reliability of his conclusions based on his knowledge, training, and experience. "An expert's testimony is not unreliable simply because it is founded on his experience rather than on data[.]" *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). An expert, however, cannot base his testimony on mere speculation or belief; he must describe the "methodologies and principles" supporting his opinion. *Id*. (citing *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010); *Trs. of Chicago Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Trust Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787-78 (7th Cir. 2007)). It is permissible for an expert to have an initial hypothesis then conduct research to support it. *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 503 (9th Cir. 1994) (citing *Viterbo v. Dow Chemical Co.*, 646 F.Supp. 1420, 1425 (E.D. Tex. 1986), *aff'd*, 826 F.2d 420 (5th Cir. 1987)).

At the *Daubert* proceeding, Dr. Chiodo testified to general causation and clarified points from his deposition. He testified he relied on his knowledge, training, and experience as well as the facts in this case, to render his opinion. The articles he cites in his report, the Awan study and

Yatera study, merely support his conclusions. It is his opinion that welding fumes are known to cause pharyngeal cancer, including tonsil cancer. In this case, Dr. Chiodo reviewed at least thirty documents: numerous medical records and reports, medical billing statements, test results, depositions, and Mr. Puffer's railroad personnel records including a photo of Mr. Puffer holding an arc welding rod. *See* Doc. 74-3. He also spoke with Plaintiff regarding Mr. Puffer. He researched literature on the PubMed database and identified articles supporting his conclusions from peer-reviewed medical publications. Dr. Chiodo testified he did not perform research prior to making his diagnosis due to his knowledge and familiarity with various cancers and welding.

     As to his training, knowledge, and experience, Dr. Chiodo explained his medical work in the city of Detroit, with particular experience in occupational work hazards. Considering his long history of education and training, it is not necessary that Dr. Chiodo rattle off his coursework or a lecture he may have attended from decades prior. In response to Defendant's question on where he learned about welding fumes and oropharyngeal cancer, Dr. Chiodo did point to his training and studying in public health at Harvard, becoming a certified industrial hygienist, and training in toxicology. Doc. 74, at 73:16-74:6. As Dr. Chiodo alluded to in his testimony, it would be unreasonable to expect doctors to publish peer-reviewed articles or conduct in-depth scientific studies on every ailment he or she encounters, before rendering a diagnosis. It has long been accepted that medical professionals may rely on other medical professions' opinions in forming their own opinions. *Walker v. Soo Line R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000). An expert's reliance on the reports of other professionals often support the reliability of the expert's testimony. *Id*. Further, in his deposition, Dr. Chiodo testified while he did not treat Mr. Puffer, he has treated at least one patient with oropharyngeal cancer specifically. Doc. 74-2, at 66:23-67:2.

After drawing upon his knowledge, training, and experience to form his conclusions in this case, Dr. Chiodo supported his opinions with two articles. The Court is also unconvinced by Defendant's arguments that the articles do not support his opinion. At the *Daubert* proceeding, Dr. Chiodo further explained the two main articles and discussed a study cited within the Awan article, the Gustavsson study.[5] The abstract of the Awan study states it is a systematic review of fourteen articles that aimed to determine the association of oral and pharyngeal cancers (OPC) and exposure to various carcinogenic substances. Doc. 74-9, at 1. "The results showed a significant association between formaldehyde, wood dust, coal dust, asbestos, *welding fumes*, and risk of developing OPC[.]." *Id*. The Awan study cites to Gustavsson for the finding, "[o]ne study showed an increased risk of OPC after [greater than] eight years of occupational exposure to welding fumes." *Id.* at 6. While Defendant objected to Plaintiff's use of the Gustavsson study at the proceeding, it previously discussed the study in its brief and Dr. Chiodo's deposition. *See* Docs. 74, at 12 n.3; 74-10; 74-2, at 98:8-100:4 (citing Awan study at 2729 n.11).

At the proceeding, Dr. Chiodo again confirmed the Yatera study corroborates his opinion because it found hexavalent chromium creates a risk of cancer in the respiratory tract. According to Dr. Chiodo, the tonsils are anatomically included in the respiratory tract. Therefore, the article supports his conclusion because welders are exposed to hexavalent chromium. He stated hexavalent chromium is generated during the welding process when the metal is welded upon if there is chromium in the metal. Doc. 74-2, at 135:20-136:3. Chromium is present in stainless steel and other steel alloys. *Id.* at 135:3-135:5. Dr. Chiodo confirmed his basis for knowing welders are exposed to hexavalent chromium is his knowledge, training, experience, and the articles he cited. *Id.* at 141:10-142:17. Dr. Chiodo also noted that with the effects of carcinogenic

---

[5] Gustavsson et al., *Occupational Exposures And Squamous Cell Carcinoma Of The Oral Cavity, Pharynx, Larynx, And Oesophagus: A Case-Control Study In Sweden*, 55 OCCUP. ENVIRON MED. 393-400 (1998).

substances, no particular threshold level of exposure defines whether one will or will not develop cancer, but more exposure can increase the likelihood of cancer. *Id.* at 50:14-51:17. Based on the evidence before the Court at this time, the Yatera study supports his finding that exposure to hexavalent chromium throughout a lengthy welding career can cause tonsillar cancer.

Overall, Dr. Chiodo explained why the articles supported his finding that welding fumes can cause oropharyngeal cancer: he discussed the various confidence intervals in the studies; he explained the differences between association and causation; he described his perceived reasoning as to why a subset in one of the studies did not meet the authors' threshold for finding an "association" – due to its failure to meet the 95% confidence interval. Dr. Chiodo also pointed out that science generally requires a proof of 95% certainty and quoted a reference guide on epidemiology. *See* Daubert Ex. 7 ("The most common significance level, or alpha, used in science is .05 . . . A common error made by lawyers, judges, and academics is to equate the level of alpha with the legal burden of proof. Thus, one will often see a statement that using an alpha of .05 for statistical significance imposes a burden of proof on the plaintiff far higher than the civil burden of a preponderance of the evidence (i.e., greater than 50%)"). While Dr. Chiodo clarified he was not opining on any legal issue, nor does the Court credit it as such, he wanted to explain his commentary on associations and the articles he cited in support of his conclusions.[6]

Plaintiff bears the burden of proof, however, Defendant failed to rebut how the articles cited by Dr. Chiodo do not support his conclusion that welding fumes can cause the type of cancer Mr. Puffer had. In the aggregate, Plaintiff sufficiently demonstrates Dr. Chiodo's

---

[6] When questioned that the study Dr. Chiodo cited only discusses an association, he testified "I agree with the general statement that association does not necessarily mean causation. But association does not mean -- somebody using the term, talking about association, does not mean that there is not causation." He further explained that in medical articles, "when they use language like 'significant association,' that is very strong language saying that they believe, based upon their systematic review of the literature, that welding fumes cause oropharyngeal cancer." Doc. 74-2, at 118:4-118:17.

9

testimony meets the admissibility standard to render a conclusion as to general causation in this case. Defendant is free to rebut Dr. Chiodo's testimony with its own evidence or expert at trial.

### B. Specific Causation

In his expert reports and at the *Daubert* proceeding, Dr. Chiodo confirmed he understood that Mr. Puffer was a smoker, his work records clearly indicated that his work involved welding, he repaired bridges for 42 years, his clothing had welding burns, and his clothing smelled like coal and had dark stains. At the *Daubert* proceeding, Defendant did not take issue with Dr. Chiodo's knowledge of Mr. Puffer, his work environment, or his cancer risk factors. However, it argues in its Motion that Dr. Chiodo did not follow the scientific method for differential etiology, therefore his conclusion on specific causation is unreliable. *See* Doc. 74, at 20.

Dr. Chiodo claims to have applied differential etiology in this case. Doc. 74-2, at 185:2-185:13. Differential etiology can satisfy *Daubert* if the expert applied reliable methods, which is determined on a case-by-case basis. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). In differential etiology, a doctor rules in all the potential causes of a person's disease or injury then systematically rules out causes that do not apply to the person. *Myers*, 629 F.3d at 644. After this process, the doctor determines the likely cause or causes of the ailment. *Id*. While an expert does not have to exclude all alternatives with certainty, courts can consider "whether the expert has adequately accounted for obvious alternative explanations." *Brown*, 765 F.3d at 773 (citing *Schultz*, 721 F.3d at 434) (internal quotations and citation omitted). Such consideration includes whether the expert explained why an alternative explanation is not the sole cause of the disease or injury. *Schultz*, 721 F.3d at 434.

In addressing specific causation, both parties cite *Brown*, 765 F.3d 765. *See* Docs. 74, at 16-19; 76, at 16-18. However, *Brown* is distinguishable from this case. Oropharyngeal cancer is

different than the cumulative vibration injury in *Brown* where a review of the plaintiff's workplace may have been of more value. While Dr. Chiodo did need an understanding of Mr. Puffer's work, the type of testing for a vibration injury may have had more value or necessity in *Brown*. Additionally, the plaintiff's injury in *Brown* allegedly occurred over a much shorter period of about 3 years whereas Mr. Puffer worked for the railroad for 42 years and stopped working about 10 years before he passed away. The *Brown* expert reported that his methodology entailed "measuring frequency and force required for various job tasks; videotaping and photographing job task activities for further analysis"; identifying "variances in the written job description as compared to the actual duties performed; using scientific measuring tools, such as a Chatillon gauge, which constitutes an objective measure of force; assessing push/pull job function factors; and evaluating the level of force exertion required to perform a job task." *Brown*, 765 F.3d at 769. In reality, based on the expert's deposition, rather than performing these tasks, the expert mainly based his opinion on observations as an independent contractor 10 years prior on a different site railroad site. *Id.* at 769-70. Thus, he relied on untestable assumptions and his own subjective experience. *Id.* at 771. The *Brown* expert failed to follow his own methodology and failed *to rule in* the plaintiff's job as a factor. *Id*. Ultimately, the district court in *Brown* excluded the expert for unreliable methods because he deviated substantially from the recognized scientific practices that he described. The Seventh Circuit affirmed the district court's ruling and further remarked the expert did not consider the plaintiff's work as a volunteer firefighter, family history of the same disorder, or the fact that plaintiff rode a motorcycle regularly. *Id*. Therefore, he failed to *rule out* other causes under differential etiology. *Id.* at 774.

      Unlike the expert in *Brown*, Dr. Chiodo considered which alternative causes should be ruled in and which causes could be ruled out. *See* Doc. 74-2, at 187:23-188:1-3. In his

deposition, Dr. Chiodo confirmed the likely causes of oropharyngeal cancer include smoking, alcohol, HPV ("human papilloma virus"), and welding. *Id.* at 85:4-85:9. As to specific causation, Dr. Chiodo stated he considered Mr. Puffer's work as a welder for 42 years and his wife's confirmation that Mr. Puffer's clothes smelled of smoke. During the *Daubert* proceeding, Dr. Chiodo elaborated that despite Mr. Puffer's history of cigarette smoking, Mr. Puffer had more exposure to welding fumes than tobacco smoke because he worked for the railroad for 42 years. Dr. Chiodo relied on his own experience as a welder from ages 12 to 21 to corroborate the smell of smoke when one is welding. He remarked, "you can taste it in your mouth." In his deposition, he explained he could not rule HPV as the sole cause because Mr. Puffer's welding experience could not be ruled out as a cause. *Id.* at 188:15-189:11. Likewise, he could not rule welding as the sole cause because he could not rule out HPV. *Id.* at 189:20-189:22. At the *Daubert* proceeding, Dr. Chiodo again testified he tried to eliminate other potential causes of Mr. Puffer's cancer, but he could not.

     Based on Defendant's brief in its Motion, the Court recognizes there could be perceived inconsistencies between Dr. Chiodo's deposition and his *Daubert* proceeding testimony. In his deposition, there were a few instances where Dr. Chiodo *could not recall* the extent of Mr. Puffer's smoking history, alcohol, or HPV diagnosis. *Id.* at 64:9-64:21, 88:24-89:6, 183:18-22. Nor is the record entirely clear on these points. However, there were other instances where Dr. Chiodo testified he ruled in smoking, alcohol, and HPV in addition to welding fumes as causes of Mr. Puffer's cancer and could not rule any of them out. *Id.* at 191:12-191:23,193:9-193:16. At some point between Dr. Chiodo's deposition and the *Daubert* proceeding, he refreshed his recollection regarding Mr. Puffer's risk factors. Such inconsistencies were not directly contradictory as Dr. Chiodo merely stated "he could not recall." Overall, these potential

12

inconsistencies go to the weight and credibility of his testimony. Therefore, such issues can be explored on cross-examination at trial and are better suited for a jury to decide in its credibility determination.

Further, so long as differential etiology was applied, even if Dr. Chiodo was "unaware of aspects of [Mr. Puffer's] work or medical history, that doesn't necessarily mean the expert should be struck." *See Myers*, 629 F.3d at 645 (instructing district courts to allow inaccuracies to be explored through cross-examination where a medical expert "relied upon a patient's self-reported history and that history is found to be inaccurate."). A jury has an "essential role as the arbiter of the weight and credibility of expert testimony." *Gopalratnam*, 877 F.3d at 781. An expert may provide testimony that applied valid and proper methodology, yet the conclusion is subject to doubt. *Id*. At that point, the jury can determine the weight of any sources of doubt. *Id*. Based on the evidence before the Court, Dr. Chiodo reliably applied differential etiology and followed through with his methodology in forming his conclusion that exposure to welding fumes over a 42-year career was a cause of Mr. Puffer's cancer.

The Court now turns to the third step in determining the admissibility of expert testimony. As discussed below, Dr. Chiodo's testimony will assist the jury in determining a fact at issue. In an FELA claim, causation is a question for the jury to determine. *Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1293–94 (7th Cir. 1993); *Walker*, 208 F.3d at 587. Here, as Defendant pointed out, Dr. Chiodo's testimony is essential to Plaintiff's case. Mr. Puffer worked for the railroad for 42 years and Plaintiff alleges his work, including that of a welder, was a cause of his cancer. Dr. Chiodo's testimony will assist the jury in determining whether welding fumes were attributable to Mr. Puffer's cancer diagnosis. Thus, the Court finds Dr. Chiodo's testimony will be relevant and helpful to the jury, and he may testify to causation.

Finally, at the *Daubert* proceeding both parties mentioned other cases in which Dr. Chiodo's expert testimony was admitted or excluded. Dr. Chiodo even pointed out that a federal judge has never excluded him after hearing his testimony at a *Daubert* proceeding. However, the Court notes the U.S. District Judge in *Simon v. Select Comfort Retail Corp.*, from the Eastern District of Missouri did precisely that. *See* No. 4:14-CV-1136 JAR, 2016 WL 160643, at *7 (E.D. Mo. Jan. 14, 2016) (finding Dr. Chiodo's testimony inadmissible because he "failed to provide an adequate methodology for his conclusions on causation, and his primary reliance on temporal relationships is insufficient to satisfy the requirements of *Daubert*"). Even though other courts have found Dr. Chiodo's expert testimony inadmissible in FELA cases, this Court is not bound by those decisions and those cases are distinguishable. *See Harder v. Union Pac. R.R. Co.*, No. 8:18CV58, 2020 WL 469880, at *1 (D. Neb. Jan. 29, 2020), *appeal docketed*, No. 20-1417 (8th Cir. Mar. 2, 2020); *West v. Union Pac. R.R. Co.*, No. 8:17CV36, 2020 WL 531994, at *5 (D. Neb. Feb. 3, 2020), *appeal docketed*, No. 20-1422 (8th Cir. Mar. 4, 2020); *O'Neill v. Union Pac. R.R. Co.*, No. 8:18CV385, 2020 WL 4260596, at *12 (D. Neb. July 23, 2020). Those cases involved different evidence and facts including different injuries, occupations, and toxins. Here, the Court also had the benefit of hearing Dr. Chiodo's live testimony. In contrast, Plaintiff cited cases where district courts found Dr. Chiodo admissible. Again, these cases are factually different, and the admissibility of an expert is determined on a case-by-case basis.

## II. Motion for Summary Judgment

In the event Dr. Chiodo's testimony is excluded, Defendant requests that the Court grant summary judgment in its favor. Doc. 74, at 20. Defendant argues Plaintiff must offer expert testimony on the cause of Mr. Puffer's cancer because it would not be known or obvious to a

layperson. Doc. 74, at 20 (citing *Myer*, 629 F.3d at 643). Plaintiff does not contest that it cannot meet its burden of proof without Dr. Chiodo. *See* Doc. 76.

In an FELA claim, plaintiff must show causation; therefore, a failure to show causation is fatal. *Kopplin v. Wisconsin Cent. Ltd.*, 914 F.3d 1099, 1105 (7th Cir. 2019). Expert testimony is required in an FELA claim where causation would not be obvious to a layman. *Myers*, 629 F.3d at 643. "[Where] there is no obvious origin to an injury and it has 'multiple potential etiologies, expert testimony is necessary to establish causation.'" *Id.* (quoting *Wills v. Amerada Hess Corp.,* 379 F.3d 32, 46–47 (2d Cir. 2004); citing *Claar*, 29 F.3d at 504). The causation of tonsillar cancer is not easily understood by a layperson; therefore, Plaintiff must offer expert testimony. As discussed above, the Court has determined Dr. Chiodo's testimony is admissible under *Daubert*. Because genuine issues of material exist as to causation and Dr. Chiodo's causation testimony is admissible, this case must proceed to trial.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 74) to exclude the expert testimony of Dr. Chiodo is DENIED.


Signed on this 20th day of November, 2020.

s/James E. Shadid
James E. Shadid
United States District Judge
